**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE:**
**Scientific-Atlanta, Inc. : The Matter of John Pietri**

Case No.6: 08-mc-56-GAP-DAB

**ORDER**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** MOTION TO COMPEL THE SUBSTANTIVE TESTIMONY OF JOHN PIETRI (Doc. No. 10)
>
> **FILED:** June 13, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

The issue presented is the applicability of deponent John Pietri's assertion of the privilege against self-incrimination during his deposition. The Court has reviewed the record, which has been supplemented by the inclusion of the deposition transcript, exhibits and briefing by all parties. The parties have declined an *in camera* or other evidentiary hearing and have suggested that the matter can be resolved on the papers.

*Background*

This case is related to a class action pending in the Northern District of Georgia, styled *In Re Scientific-Atlanta, Inc. Securities Litigation*, Civil Action No.1:01-CV-1950-RWS (the "Class Action"). In the Class Action, Plaintiffs claim that Scientific-Atlanta, Inc. (herein "Scientific") and its two top executives committed securities fraud by, *inter alia*, channel stuffing and paying improper

'incentives' to its largest customers, including Charter Communications, Inc. (herein "Charter"). According to the papers, Pietri is the former Senior Vice President of Engineering of Charter.

Plaintiffs assert that Defendants in the Class Action participated in a sham transaction involving the price of set-top boxes.[1] Plaintiffs have alleged that Pietri "played an integral role" in the scam, but no criminal action has been brought against him. Four other executives of Charter, however, were prosecuted for wire fraud.

In his response to the motion (Doc. No. 11 at 3), Pietri asserts that, on November 12, 2002, he, his attorney, and the Office of the United States Attorney for the Eastern District of Missouri executed a letter agreement pursuant to which, among other things, he agreed to testify as a potential witness and the United States agreed to certain limitations on the use of his testimony. *See* Letter Agreement, Exhibit 1 to Capes Declaration. That same day, following execution of the Letter Agreement, United States government agents interviewed Pietri concerning various matters related to his employment with Charter, including but not limited to the set-top box transaction. Capes Declaration at ¶7. On March 4, 2003, United States government agents again interviewed regarding matters connected to his employment at Charter. Capes Declaration at ¶8. After the four executives were indicted, the United States served a subpoena upon Pietri to appear and testify at their trial.

The indicted defendants each pled guilty to one count of the Indictment, with the last plea taken on January 26, 2005.[2] Importantly, Pietri asserts that on January 13, 2005, he, along with his

---

[1] The particulars of the sham transaction are described in Plaintiffs' motion and in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, _U.S.__, 128 S.Ct. 761, 766-767, 169 L.Ed. 2d 627 (2008).

[2] According to the judgment in the criminal trial, Defendant Barford pled on December 16, 2004; Defendant McCall pled on July 25, 2003; Defendant Smith pled on January 4, 2005, and Defendant Kalkwarf pled on January 26, 2005.

counsel, met with federal prosecutors and agents to "prepare for his possible appearance at trial" (Doc. No. 11 at 4). As a result of the guilty pleas, no trial was necessary, and Pietri did not testify.

On March 11, 2008, Plaintiffs deposed Pietri here in Orlando and he declined to answer almost all questions, including questions concerning the sham transaction, citing the Fifth Amendment.

*The Law*

The controlling law is not in dispute. The Fifth Amendment privilege against self-incrimination (U.S. Const. amend. V.) 'protects a person . . . against being incriminated by his own compelled testimonial communications.'" *United States v. Argomaniz*, 925 F.2d 1349, 1352 (11th Cir. 1991) (*quoting Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed. 2d 39 (1976)). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (internal citations omitted).

"A witness may properly invoke the privilege when he 'reasonably apprehends a risk of self-incrimination . . . though no criminal charges are pending against him . . . and even if the risk of prosecution is remote.'" *United States v. Cuthel*, 903 F.2d 1381, 1384 (11th Cir. 1990) (quoting *In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980). As the Fifth Circuit Court noted in *Corrugated Container:*

> [A] court must ordinarily make two inquiries to determine whether a witness is entitled to assert the privilege and refuse to respond to questioning. First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities. If the answers could not be incriminatory, the witness must answer. *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). If answering the questions might incriminate the witness, the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on.

> As the Seventh Circuit recently observed:
> '(This determination does not depend) upon a judge's prediction of the likelihood of prosecution. Rather, . . . it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken. . . . When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster.'
> *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979) (citations omitted).

*In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086 at 1091-1092.

With these principles in mind, the Court turns to the deposition.

*Analysis*

"A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976). Plaintiffs assert that they wish to "explore only one specific area--the circumstances surrounding the "Sham Transaction." Toward that end, the parties do not quote question by question the numerous assertions of privilege made during the deposition. Rather, the question is presented broadly: whether Pietri can appropriately claim privilege in response to *every* substantive question asked in his deposition, no matter how tangentially related to the sham transaction. Answered broadly, the Court finds he cannot.

*The first inquiry: Are the questions incriminating?*

The Court notes that there are many questions in the deposition that do not qualify as incriminating, yet Mr. Pietri refused to answer. Questions such as "where did you attend college" (Deposition, p. 8) and questions relating to his employment history (pp. 8-9) and other known factual information regarding his experience in the industry and position with Charter (pp. 9-12) do not "tend to reveal that the witness has been engaged in criminal activities" and, as such, cannot support the claim of privilege on this record. To the extent the motion seeks an Order compelling the answer to

-4-

these basic introductory questions regarding Pietri's education and occupational background, it is **granted.** These questions, as a matter of law, are not incriminating in this context.

A closer call involves the series of questions regarding the prosecution of the four Charter executives. Questions such as "isn't it true that certain executives at Charter were sentenced to prison for that scheme" (p. 12) and "on July 27, 2004, did the SEC issue an order requiring Charter to take certain measures" (p. 17) relate to established facts that on their face are not incriminating to *this* witness, while questions such as "and did you have involvement in that scheme" (p. 13) might well be incriminatory. Giving the deponent the benefit of the doubt, and in the absence of a specific question by question objection, the Court will assume that any question regarding the prosecution of the four Charter executives is close enough to be fairly characterized as possibly incriminatory, for purposes of step one of the analysis.

The final area is the bulk of the deposition and consists of questions directly about the Sham Transaction. These questions may tend to reveal that the witness has been engaged in criminal activity, and are therefore clearly involve potential self-incrimination, for purposes of this step of the analysis.

*The second inquiry: Is there a risk of criminal prosecution*

Plaintiffs assert that the invocation of privilege was improper in that 1) the applicable statute of limitations has run on the crimes for which Pietri could reasonably fear being charged and 2) it is more reasonable to infer that Pietri took the Fifth to protect specific information from being discovered, rather than to protect himself from any actual risk of incrimination. On this record, the Court agrees that deponent has failed to show a risk of criminal prosecution that is anything other than fanciful.

There is no dispute that Pietri was not prosecuted for his involvement (if any) in the wire fraud. Nor is there a dispute that the Sham Transaction took place in 2000 and 2001, such that the five-year statute of limitations pursuant to 18 U.S.C. § 3282, would appear to bar the Government from prosecuting Pietri for any role he might have allegedly played in that matter. *See Brown v. Walker*, 161 U.S. 591, 598 (1896) ("if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer.") Pietri and Scientific, however, contend that "because the government could argue that Charter's accounting relating to the marketing support payments affected financial institutions on which Charter relied for credit, it is possible that Mr. Pietri also could be charged with wire fraud affecting a financial institution or bank fraud." The general five-year limitations period is extended by 18 U.S.C. § 3293(2) to ten years if the wire fraud "affects a financial institution" and bank fraud violations also have a ten-year statute of limitations. 18 U.S.C. § 3293(1). The Court holds that this possibility is too thin a reed to support invocation of the privilege.

Pietri presents no basis for concluding that his fear of prosecution for bank fraud is "reasonable." *See Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The facts show that he is not under indictment or otherwise defending such a charge, and he presents no showing that anyone else connected with Charter was prosecuted for bank fraud, including those alleged to be principals of the sham transaction. Moreover, he fails to provide any reason to fear that such a charge is being contemplated by the government, or that he is currently under suspicion for this or any other prosecutable offense.[3] The history of the long closed criminal case, in fact, suggests otherwise. On this record, Pietri cannot be prosecuted for wire fraud and there is no foundation for

---

[3] Scientific's assertion that Pietri could somehow be prosecuted for conspiracy to conceal Charter's wrongdoing is similarly groundless. Pietri asserts that he was a cooperating witness in the prosecution of Charter executives.

a reasonable fear of prosecution for bank fraud or any other crime associated with the Sham Transaction.

Pietri alternatively asserts that, as he met with federal agents two weeks before the last defendant pled guilty, it is possible that he made statements to the agents that could subject him to jeopardy under 18 U.S.C. § 1001 (witness may be prosecuted for giving false information to a federal agent). The applicable statute of limitations for prosecutions brought under 18 U.S.C. § 1001 is five years. 18 U.S.C. § 3282 (2000). The Court finds this showing to be insufficient.

First, the earlier interviews were in 2002 and early 2003 and therefore, without the limitations period. Thus, the only possible basis for apprehension would be the last meeting which was *not* described as an interview, but a meeting "in preparation for his possible appearance as a witness at trial." (Doc. No. 11-2). This meeting was on January 13, 2005, *after* three Charter defendants had already pled guilty, less than two weeks before the last defendant pled, and well after Pietri had been interviewed and made his proffer. Importantly, there is no indication as to what occurred at this meeting, and no reason to conclude that any statements were made by Pietri at all, let alone representations that were untruthful. As Pietri does not represent that he provided *any* information to the government at this meeting[4] and, considering that he had already twice been interviewed, had already provided a detailed proffer (Doc. No. 11-2 at p. 4), and three defendants had already pled, there is no reason on *this* record to conclude that this final meeting was anything other than perfunctory. As there is nothing to support an inference that actionable false representations may have been made at this meeting, any possibility of persecution for same is pure conjecture.[5]

---

[4] Pietri does not argue that he made any false statements nor that anyone has even suggested that any of his statements might be actionable.

[5] Indeed, to hold otherwise is to grant a *per se* privilege for any person to refuse to testify in *any* matter whatsoever, once they speak to a federal agent. Such a result is counter to the prohibition against the blanket invocation of the privilege.

The motion is **granted** and the assertion of the privilege is **overruled.** The deposition shall be reconvened (at a time and place mutually acceptable to the deponent, parties and counsel) and the witness is **ORDERED** to answer the questions, as stated in the deposition.

**DONE** and **ORDERED** in Orlando, Florida on July 24, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record